**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01675-TWP-TAB |
| | ) | |
| MESO SCALE DIAGNOSTICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of

Civil Procedure 12(b)(2) and 12(b)(6) by Defendant Meso Scale Diagnostics, LLC ("Meso")

([Filing No. 23](#)).  Plaintiff Roche Diagnostics Corporation ("Roche Diagnostics") initiated this

lawsuit, seeking a declaratory judgment that it is not infringing any license rights of Meso in

patented "ECL technology."  After many years of disputes among Meso, Roche Diagnostics, and

Roche Diagnostics' affiliates concerning patent, license, and other contractual rights, Roche

Diagnostics and its affiliates obtained a favorable judgment regarding some of the conflicts

between the parties following a bench trial in a Delaware state court.  After Roche Diagnostics

received the favorable judgment, Meso asserted that it believed the Delaware litigation did not

resolve some of the parties' disputes and that it retained the right to litigate claims that Roche

Diagnostics infringed Meso's license rights in electrochemiluminescence ("ECL Technology"), a

patented diagnostics detection technology.  ([Filing No. 1 at 1](#).)  In response to Meso's contentions,

Roche Diagnostics filed this declaratory judgment action to obtain a legal declaration that it does

not infringe Meso's license rights in the patented ECL technology.  Meso filed its Motion to

Dismiss, asserting that this Court does not have personal jurisdiction over Meso and that Roche

Diagnostics' Complaint fails to state a cognizable claim.  For the following reasons, the Court **GRANTS** Meso's Motion to Dismiss.

## I.  <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Roche Diagnostics.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("the pleadings and affidavits are to be construed in the light most favorable to [Roche Diagnostics] . . . a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor").

Roche Diagnostics is an Indiana corporation with its headquarters in Indianapolis, Indiana. It is an indirect subsidiary of Roche Holding AG ("Roche Holding"), which is a Swiss corporation and global healthcare organization that operates worldwide under two divisions—pharmaceuticals and diagnostics.  Roche Holding conducts its diagnostics business through a number of its companies, including Roche Diagnostics.  Pursuant to licenses granted to Roche Holding, Roche Diagnostics GmbH (a German company), and other Roche affiliates in 2003 and 2007, Roche Diagnostics markets and sells diagnostics products in the United States that use patented diagnostics detection technology known as ECL Technology ([Filing No. 40-3](); [Filing No. 40-4]()). ECL Technology is used to detect diseases such as cancer, liver disease, and tuberculosis ([Filing No. 32 at 2]() ¶ 6).  Roche Diagnostics' affiliate BioVeris Corporation ("BioVeris") owns the patents to the ECL Technology ("BioVeris Patents").  For more than twenty years, the Roche affiliates have developed and marketed products using ECL Technology.  They have built their diagnostics

business into a world leader. Their diagnostics products, including those using ECL Technology, are sold through Roche Diagnostics in every state in the United States.

Meso is a Delaware limited liability company based out of Rockville, Maryland. Meso was formed as a joint venture in 1995 between Meso affiliate Meso Scale Technologies, LLC ("MST") and IGEN, Inc. ("IGEN"), a California corporation with its principal office in Maryland. The joint venture was formed to explore potential combinations of the ECL Technology with MST's multi-array and disposable electrode technologies. Pursuant to a 1995 license agreement, Meso has a limited exclusive license from BioVeris—originally granted from IGEN—to use the ECL Technology, including the BioVeris Patents, in connection with certain research-related technologies (Filing No. 35-1). This license agreement was amended in 2001 and 2004 (Filing No. 35-2; Filing No. 35-3).

ECL Technology is the detection technology used by Roche Diagnostics in its line of immunoassay analyzers marketed and sold under the COBAS brand name. Immunoassays are diagnostic tests used to detect, monitor, and guide the treatment of disease and other conditions in human patients. ECL Technology uses electricity, chemistry, and light to detect and measure the presence of specific molecules in a test sample, for example molecules of a virus in a sample of blood or other bodily fluid.

Roche Diagnostics' COBAS instruments employing ECL Technology utilize a detection component called a "flow cell" in which the ECL reaction takes place. The flow cell is reusable, contains one permanently installed electrode, and conducts one test at a time. All of Roche Diagnostics' ECL Technology products sold in the United States are FDA-approved for use in diagnostic testing of humans.

In 1992, Boehringer Mannheim GmbH ("BMG"), a German company that a Roche Diagnostics affiliate later acquired, obtained an exclusive license to ECL Technology, including the BioVeris Patents. This license allowed for the development and commercialization of ECL Technology for use in the market fields of hospitals, blood banks, and clinical reference laboratories. BMG obtained the license from IGEN ([Filing No. 40-2](#)). IGEN had acquired the ECL Technology in the 1980s, including the patents describing the ECL Technology. BMG was acquired by a Roche Diagnostics affiliate in 1998.

A dispute arose between IGEN and Roche Holding regarding the extent of the license granted in 1992 concerning the ECL Technology, and following litigation over the license, IGEN and Roche Holding entered into an additional license agreement in 2003. Under the 2003 agreement, Roche Holding received a non-exclusive license to develop, manufacture, and sell products using ECL Technology, including the BioVeris Patents, in a defined field that included all human testing for detection of disease, patient treatment, and monitoring purposes without limitation as to the setting. The field covered by this non-exclusive license specifically excluded use of ECL Technology in connection with multi-array assays and related technologies that were subject to Meso's 1995 limited license. Roche Diagnostics received a sublicense under this 2003 license agreement. As part of the agreement between IGEN and Roche Holding, IGEN was acquired by Roche Holding and much of IGEN's business, including the BioVeris Patents, was spun off to the newly-formed company BioVeris.

Although Meso was not a party to the 2003 Roche Holding license agreement, it did expressly consent to the entire 2003 agreement, including IGEN's representations that IGEN held the rights being licensed to Roche Holding and Roche Holding's ability through the license granted to practice ECL Technology within the 2003 defined field.

Because it wanted to expand its ECL Technology market, Roche Holding acquired BioVeris with its patents and other rights in the ECL Technology in 2007. BioVeris granted an expanded license to Roche Diagnostics GmbH to use the ECL Technology, including the BioVeris Patents, in market fields outside the 2003 defined field but excluding exclusive rights previously granted to third-parties by IGEN or BioVeris such as Meso. This license allowed Roche Diagnostics GmbH to sublicense its rights to its affiliates such as Plaintiff Roche Diagnostics.

As noted above, Meso also has a limited license from IGEN—now from BioVeris—to practice ECL Technology. In 1995, Meso was formed as a joint venture between IGEN and Meso's affiliate MST. MST had been working with certain research technologies that allowed multiple tests to be performed in a single reading using disposable electrodes and a multi-well tray, also known as "multi-array" technology. The Meso joint venture was formed to research opportunities of combining the ECL Technology with MST's multi-array and disposable electrode technologies. To assist the joint venture, IGEN authorized Meso to use certain rights, including the BioVeris Patents, to pursue ECL Technology in connection with defined research technologies and a research program, which were defined based on the multi-array and disposable electrode technologies.

Meso manufactures and sells ECL-based analyzers, multi-well trays, and reagents for use in scientific research, including early-stage drug discovery. Meso's commercially-sold products use multi-array, disposable electrode technologies. It does not offer any FDA-approved tests. Meso's multi-array, disposable electrode technologies differ from Roche Diagnostics' single-cell, permanent electrode technology. The two different technologies result in different instruments to be used in different markets. Roche Diagnostics cannot and does not use any multi-array, disposable electrode technologies in its ECL-based COBAS instruments.

Over the course of many years, Meso, Roche Diagnostics, and the Roche affiliates have disputed the extent and reach of each other's rights to use ECL Technology under the license agreements granted to them by IGEN and later by BioVeris. Meso has repeatedly accused Roche Diagnostics and its affiliates of violating Meso's limited, exclusive rights.

In 2010, Meso and MST sued Roche Diagnostics, Roche Diagnostics GmbH, Roche Holding, IGEN, BioVeris, and others in a Delaware state court for breach of the 2003 license agreement and Meso's consent thereto. Meso asserted claims for breach of contract, injunctive relief, and equitable relief. In its complaint in the Delaware suit, Meso alleged that the Roche entities were selling products using the ECL Technology outside the 2003 defined field and that they were in breach of the 2003 license agreement. Throughout the Delaware litigation, Meso asserted that its 1995 research license agreement with IGEN provided Meso with very broad exclusive rights in the ECL Technology. Because of those rights, IGEN could not grant any license to the Roche entities unless the Roche entities also obtained a license from Meso. Therefore, according to Meso, the consent provided by Meso also made Meso a licensor of the ECL Technology rights to the Roche entities, which gave Meso enforcement rights.

Following a five-day bench trial in February 2013 and post-trial briefing and argument, on June 25, 2014, the Delaware court issued a 77-page memorandum opinion, which found in favor of the Roche entities and rejected Meso's claim to being a party to or having rights to enforce the 2003 license agreement between IGEN and Roche Holding. Following Meso's appeal of the decision, the Delaware Supreme Court summarily affirmed the judgment in favor of the Roche entities on June 18, 2015. Meso's petition for a writ of certiorari to the United States Supreme Court was denied.

After the Delaware Supreme Court affirmed the lower court's decision, Meso through its litigation counsel notified F. Hoffman-La Roche Ltd. through its general counsel in Basel, Switzerland, that in Meso's view, the Delaware litigation did not resolve the dispute regarding the extent and reach of Meso's 1995 license covering the use of ECL Technology, including the BioVeris Patents. Meso asserted that it retained the right to litigate the issue of the patents and the license covering the patents and that the activities of the Roche entities infringed Meso's rights under the 1995 license agreement.

Meso met with representatives of Roche Diagnostics in October 2015 at the offices of Roche Diagnostics' outside counsel in Milwaukee, Wisconsin. At the meeting, Meso's counsel asserted that Meso had complex patent rights arising out of its expansive research program and that Meso was entitled to assert those rights against the Roche entities' sales both outside and within the 2003 defined field. Following this meeting, Meso's counsel wrote again to Roche Diagnostics' general counsel in Switzerland, asking for another meeting to discuss the patent and license issue.

Frustrated, and believing that further discussions would be unproductive, Roche Diagnostics initiated this litigation on October 22, 2015 (Filing No. 1). Asserting that it is bringing this action under the United States Patent Laws, 35 U.S.C. § 1 *et seq.*, Roche Diagnostics seeks a declaratory judgment of non-infringement of Meso's license rights to use ECL Technology under the BioVeris Patents. Roche Diagnostics asserts that it is entitled to judgment from this Court that Roche Diagnostics does not violate any of Meso's limited exclusive license rights in the ECL Technology under any of the BioVeris Patents.

Roche Diagnostics explains that there is an actual and justiciable controversy between Roche Diagnostics and Meso in that Meso has asserted in correspondence and in other

communications that the Roche entities' use of ECL Technology infringes Meso's limited exclusive license rights under the BioVeris Patents and has threatened suit on that basis. Roche Diagnostics maintains that it has not and does not infringe the BioVeris Patents in violation of Meso's license rights in the ECL Technology.

Roche Diagnostics further maintains that it does not challenge the validity of any of the BioVeris Patents nor does it dispute that some of its products are covered by some of the BioVeris Patents. Roche Diagnostics seeks confirmation that it has the right to practice ECL Technology with respect to the products it now sells pursuant to its licenses and that its practice of ECL Technology does not violate Meso's rights under the 1995 Meso license agreement.

Meso filed its Motion to Dismiss, arguing that this Court does not have personal jurisdiction over Meso, and further, that Roche Diagnostics' Complaint fails to state a cognizable claim because it fails to identify any of the patents at issue in this case.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint where there is a "lack of personal jurisdiction" over the defendant. Fed. R. Civ. P. 12(b)(2). "[P]ersonal jurisdictional issues in patent infringement cases are reviewed under Federal Circuit law, not regional circuit law." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009).

> When, as here, the district court makes its determination based on the record without an evidentiary hearing, plaintiffs need only show a *prima facie* case for personal jurisdiction. When analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor.

*Grober v. Mako Prods.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (citation omitted); *see also Avocent*, 552 F.3d at 1329 ("In the procedural posture of a motion to dismiss, a district court must accept

the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."). "Although we must resolve factual conflicts in [the plaintiff's] favor, it is entitled to only those inferences that are reasonable." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009). When resolving a Rule 12(b)(2) motion, courts are not limited to consideration of the facts alleged in the complaint but may also consider affidavits and other written materials in the absence of an evidentiary hearing. *See id.* at 1017; *Avocent*, 552 F.3d at 1329.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."

*Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

While review under Rule 12(b)(6) is limited to the complaint, courts consider documents attached to and incorporated in the complaint as part of the complaint and will consider documents that are referred to in the complaint, which are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Because the Court is faced with a personal jurisdiction challenge to the Complaint under Rule 12(b)(2), the Court will consider the parties' affidavits and exhibits in addition to the allegations in the Complaint for jurisdictional purposes.

## III.   DISCUSSION

Meso asks the Court to dismiss this action based on the lack of personal jurisdiction over Meso or, alternatively, based on the failure to state a claim for which relief can be granted because the Complaint does not specify the patents at issue.

As another district court within the Seventh Circuit succinctly noted, "jurisdiction is a threshold requirement that must be satisfied before a court can pass judgments on the merits." *Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*, 2014 U.S. Dist. LEXIS 57076, at *4 (N.D. Ill. Apr. 23, 2014). "The court must satisfy itself that it can exercise personal jurisdiction over [defendant] before it addresses the merits of the case. Accordingly, the court must consider [the] motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) before it can address the Rule 12(b)(3) and Rule 12(b)(6) motions." *Id.* at *5. "If the court determines that it lacks personal

jurisdiction over [defendant], it would be improper for this court to reach the merits of the case." *Id.* "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *United States v. Rachuy*, 743 F.3d 205, 211 (7th Cir. 2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). For this reason, the Court first reviews Meso's Motion to Dismiss under Rule 12(b)(2).

"If jurisdiction is exercised on the basis of a federal statute that does not authorize nationwide service of process, the law requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction."[1] *Philpot v. Dot Com Plus, LLC*, 2015 U.S. Dist. LEXIS 105016, at *2–3 (S.D. Ind. Aug. 11, 2015) (citation omitted). Indiana's long-arm statute, Indiana Trial Rule 4.4(A), governs personal jurisdiction in Indiana. "Although Rule 4.4(A) enumerates eight bases for the assertion of jurisdiction on the basis of a defendant's actions, the rule also includes a provision that 'a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.'" *Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*, 703 F. Supp. 2d 881, 886 (N.D. Ind. 2010) (quoting Ind. R. Tr. P. 4.4(A)). Therefore, a court has personal jurisdiction to the limit allowed by the Federal Due Process Clause. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006).

For a court to have personal jurisdiction over a defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of

---

[1] The federal statute serving as the basis for this litigation, the Patent Act, does not authorize nationwide service of process. *Lighthouse Carwash Sys., LLC v. Illuminator Bldg. Co., LLC*, 2004 U.S. Dist. LEXIS 21666, at *6 n.4 (S.D. Ind. Aug. 31, 2004) ("no nationwide service of process under the patent infringement statute"); *see also TechnoLines, LP v. GST AutoLeather, Inc.*, 799 F. Supp. 2d 871, 874 (N.D. Ill. 2011) ("Patent Act does not authorize nationwide service of process").

the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

Under federal due process standards, personal jurisdiction can be either specific or general. "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction." *LinkAmerica*, 857 N.E.2d at 967 (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)). "If the defendant's contacts with the forum state are not 'continuous and systematic,' specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* (citing *Helicopteros*, 466 U.S. at 418 & n.8). "Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

Specific jurisdiction exists when a defendant has deliberately directed its activities toward the forum and the cause of action results from alleged injuries that arise out of or relate to those activities. *See Burger King*, 471 U.S. at 472. In *Burger King*, the Supreme Court explained the "constitutional touchstone" of "minimum contacts" for personal jurisdiction:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State,

or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 474–76 (internal citations, quotation marks, and footnote omitted).

In the jurisdictional allegations of its Complaint, Roche Diagnostics claims that Meso is "subject to personal jurisdiction in this judicial district" because "Meso has had systematic and not isolated activities in this judicial district." (Filing No. 1 at 3 ¶ 7.)

Meso responds that this Court does not have general personal jurisdiction over it because it is not an Indiana corporation or headquartered here, and it does not maintain such a presence in and connection to Indiana that it could be considered "at home" in Indiana. Meso points to recent Supreme Court case law to argue the lack of general jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (U.S. 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 749. Meso is a Delaware corporation with its headquarters in Maryland. It does not maintain an Indiana address or telephone number. Meso argues that, given these facts, there is no basis to exercise general jurisdiction over Meso in Indiana.

Roche Diagnostics did not respond to Meso's argument regarding general jurisdiction. Roche Diagnostics failed to support its fleeting allegation that Meso has "systematic and not isolated activities" in Indiana. It appears that Roche Diagnostics abandoned its allegation implying

general jurisdiction. In light of the recent Supreme Court case law regarding general jurisdiction, and given the fact that Meso is a Delaware corporation headquartered in Maryland without an Indiana address or telephone number, the Court determines that it lacks general personal jurisdiction over Meso. Thus, the Court will turn its attention to the parties' arguments regarding specific jurisdiction.

Meso asserts that it is not subject to specific personal jurisdiction under controlling Federal Circuit authority, *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011), because any "enforcement activity" Meso has taken concerning the patents at issue took place outside Indiana.

When determining the existence of specific personal jurisdiction, "[t]his court employs a three-prong test, in which we determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). "'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus. Similarly, contacts resulting from the 'unilateral activity' of others do not count." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (quoting *Burger King*, 471 U.S. at 475 & n.17).

In declaratory judgment actions involving patents, the Federal Circuit has explained that "the relevant activities are those that the defendant 'purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent.'" *Autogenomics*, 566 F.3d at 1020 (quoting *Avocent*, 552 F.3d at 1336). "Thus, courts must examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.'" *Id.* (quoting

*Avocent*, 552 F.3d at 1336). "Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." *Radio Sys. Corp.*, 638 F.3d at 789.

Furthermore, "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 566 F.3d at 1020. Thus, a patent declaratory judgment defendant's business activities in a state are not relevant to the specific jurisdiction inquiry. Additionally, cease-and-desist letters sent into a forum state standing alone do not support the exercise of specific jurisdiction over a defendant. *Red Wing Shoe*, 148 F.3d at 1361 ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.").

Meso argues that this Court does not have specific jurisdiction over it because there are no cease-and-desist communications or any other additional enforcement activities that have been purposefully directed at Indiana. Meso also explains that the Federal Circuit has held that "the mere receipt of royalty income from sales in the forum state was insufficient to ground personal jurisdiction." *Breckenridge Pharm.*, 444 F.3d at 1364.

Meso explains that it does not have any offices, real estate, or bank accounts in Indiana. It does not have an Indiana mailing address or telephone number. Meso employs one account manager and one field service engineer who live in Indiana and who market and service Meso's products in Indiana and throughout the Midwestern United States. Meso has no other employees located in Indiana. It has similar account managers and field service engineers with similar responsibilities in at least a dozen other states and internationally. (Filing No. 24-1 at 3.) Relying

on numerous Federal Circuit opinions, Meso argues that its commercial and business activities—employing one account manager and one field service engineer who happen to live in Indiana but service the entire Midwest—cannot support specific jurisdiction in this patent declaratory judgment action because they are not enforcement activities. Employing two individuals who live in Indiana and work in numerous surrounding states has nothing to do with patent enforcement or defense activities.

Regarding its royalty payments to BioVeris for the license to use the patented ECL Technology, Meso sent its quarterly payments and reports to BioVeris in Maryland from 2005 to 2008. After acquiring BioVeris, the Roche entities relocated BioVeris, and since 2009, Meso has sent quarterly royalty reports to a BioVeris mailing address in Indiana while making the quarterly royalty payments to BioVeris to its bank account in New York. (Filing No. 24-2 at 3.) Where the receipt of royalty income from sales in the forum state is insufficient to establish specific jurisdiction, *see Breckenridge Pharm.*, 444 F.3d at 1364, similarly, paying royalty payments in New York and mailing quarterly royalty reports to Indiana should not be sufficient to establish specific jurisdiction. Additionally, the Roche entities' unilateral action of relocating BioVeris' mailing address to Indiana cannot be considered actions by Meso that are purposefully directed at Indiana.

Meso points out that it has not sent any cease-and-desist letters or other patent enforcement correspondence to Indiana, and it has not engaged or authorized an agent in Indiana to enforce its ECL Technology patent rights. (Filing No. 24-2 at 3.) All of Meso's enforcement efforts and correspondence were sent to Roche Holding in Switzerland, and settlement efforts occurred in Wisconsin at Roche Diagnostics' outside counsel's office. This cannot establish jurisdiction in Indiana.

Roche Diagnostics responds to Meso's argument by asserting that Meso has repeatedly and purposefully directed many enforcement activities against Roche Diagnostics and its affiliate, BioVeris, which are Indiana residents.  Thus, because Meso has directed enforcement activities at residents of this forum, specific jurisdiction exists.  Roche Diagnostics argues that enforcement activity does not have to be physically performed in or sent to the forum to count.  Conduct directed at an accused infringer that is headquartered in the forum is conduct directed at the forum.  *See Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).  Roche Diagnostics asserts that "[t]his is true regardless where the conduct takes place and even if the communication is made and received by agents in other states," citing *Akro*, 45 F.3d at 1546.  ([Filing No. 29 at 26](#).)  Roche Diagnostics argues that, while enforcement letters were sent to its affiliates outside the United States, this "does not detract from the fact that [Meso's] enforcement efforts were directed, in substantial part, against a resident of Indiana."  ([Filing No. 29 at 27](#).)

Roche Diagnostics is the sole U.S. marketing and sales arm for Roche Holding for its diagnostics products, including the products employing ECL Technology.  Meso's accusations of infringement and threats of legal action have been directed to the U.S. market, which is a substantial market for Roche Holding.  For example, Meso expressly referenced Roche Holding products approved by the U.S. FDA, which is a threat unmistakably aimed at Roche Diagnostics.  Further, the Roche Holding representatives at whom Meso directed its enforcement efforts were acting as representatives of Roche Diagnostics and BioVeris.  Roche Diagnostics argues that "[i]t makes no difference that [Meso] addressed some correspondence to a Roche umbrella entity in Switzerland."  *Id.*

Asserting that numerous enforcement activities have been conducted against an Indiana resident, Roche Diagnostics points to the dozens of telephone calls, meetings, and correspondence

that involved Meso throughout the course of many years. Meso has threatened litigation and demanded as much as $2 billion to resolve Meso's infringement claims. Roche Diagnostics also points to the lawsuit that Meso brought in Delaware state court against Roche Diagnostics, BioVeris, and other Roche entities, asserting that the Delaware lawsuit should be considered enforcement activities because that breach of contract action related in some ways to the ECL Technology and BioVeris Patents. Meso's post-trial efforts to resolve the parties' ongoing disputes also should be considered enforcement activities, and those efforts were directed, in part, against Indiana residents. Roche Diagnostics also asserts that Meso's efforts to interfere with the 2003 acquisition of IGEN and the 2007 acquisition of BioVeris should be considered enforcement activities directed at Roche Diagnostics.

Replying to Roche Diagnostics' argument, Meso notes that Roche Diagnostics' plea for specific jurisdiction falls short because it points to Meso's attenuated contacts with residents of the forum rather than contacts with the forum itself. Meso relies heavily on the recent Supreme Court decision in *Walden v. Fiore*, 134 S. Ct. 1115 (U.S. 2014), for its argument. Additionally, Meso replies that its lawsuit against Roche Diagnostics in Delaware cannot create specific personal jurisdiction in Indiana.

In *Walden*, the Supreme Court made clear that "[t]he proper focus of the minimum contacts inquiry . . . is the relationship among the defendant, the forum, and the litigation." *Id.* at 1126 (citation and quotation marks omitted). "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* Thus, a defendant's contacts with the forum state itself, not residents of the forum, are the important consideration.

> First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. Due process limits on the State's adjudicative

authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. We have consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.

Second, our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. . . . To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Id.* at 1122–23 (citations and quotation marks omitted).

Relying on the principle that jurisdiction is based on the defendant's contacts with the forum state itself, not the defendant's contacts with individuals who reside there, Meso asserts that Roche Diagnostics' argument that conduct is directed at the forum if it is directed at residents of the forum is unavailing. Meso explains that this argument is foreclosed by *Walden*. Roche Diagnostics' reliance on *Akro Corp.* and other pre-*Walden* cases is misplaced, and those old cases do not support Roche Diagnostics' position in this case because, where personal jurisdiction was found in those cases, such jurisdiction was based on enforcement letters being sent to the forum state directly or through agents in addition to the defendant directing further enforcement activities at the forum state. That is not the case here. The ties between Roche Diagnostics and Indiana do not support Indiana's jurisdiction over Meso.

Upon review of the allegations in Roche Diagnostics' Complaint, the affidavits, and the exhibits, the Court determines that Meso's "contacts" with this forum are very much attenuated

given the fact that almost all of Meso's conduct has been directed at Roche entities other than Roche Diagnostics, and none of the conduct has occurred in or been directed at Indiana.

Nearly all of Meso's conduct that Roche Diagnostics points to involved Roche Holding (a Swiss company) and Roche Diagnostics GmbH (a German company). The IGEN and BioVeris transactions in 2003 and 2007, with which Roche Diagnostics asserts Meso interfered, involved Roche Holding and Roche Diagnostics GmbH, and those transactions occurred outside Indiana. Those actions could not connect Meso to Indiana in any way. Meso's correspondence was sent to Roche Holding and F. Hoffman-La Roche Ltd. in Switzerland. The settlement discussions that occurred after the Delaware litigation concluded were held in Wisconsin. And the Delaware litigation that Meso initiated for breach of contract involved five defendants that are not Indiana residents in addition to Roche Diagnostics and BioVeris. That Delaware lawsuit did not connect Meso to Indiana. As the Federal Circuit plainly put it, "[w]e are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else." *Avocent*, 552 F.3d at 1339.

In light of the jurisdictional standards established in *Walden*, *International Shoe Co.*, *Burger King*, *Daimler*, *Breckenridge Pharmaceutical*, *Autogenomics*, *Avocent*, and *Red Wing Shoe*, and given the specific circumstances of this case, the Court determines that Meso has insufficient contacts with this forum for the Court to exercise specific personal jurisdiction over Meso. As previously stated, general personal jurisdiction also is lacking. Roche Diagnostics may have a strong claim for a declaratory judgment of non-infringement, but that claim cannot be adjudicated in this Court.

Because this Court lacks personal jurisdiction over Meso, the Court need not address Meso's Rule 12(b)(6) and Rule 12(e) arguments.[2]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Meso's Motion to Dismiss (Filing No. 23) is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(2). "A dismissal for lack of personal jurisdiction is not a decision on the merits and thus is without prejudice." *Schmidt v. Europea Ltd.*, 2001 U.S. Dist. LEXIS 10675, at *8 (S.D. Ind. May 18, 2001).

**SO ORDERED.**

Date: 2/21/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joshua Hafenbrack
KELLOGG HUBER HANSEN TODD
EVANS & FIGEL, P.L.L.C.
jhafenbrack@khhte.com

Mark C. Hansen
KELLOGG HUBER HANSEN TODD
EVANS & FIGEL, P.L.L.C.
mhansen@khhte.com

Michael J. Guzman
KELLOGG HUBER HANSEN TODD
EVANS & FIGEL, P.L.L.C.
mguzman@khhte.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com

Michael Wesley McBride
COHEN & MALAD LLP
mmcbride@cohenandmalad.com

Brett H. Ludwig
FOLEY & LARDNER LLP
bludwig@foley.com

Eric L. Maassen
FOLEY & LARDNER LLP
emaassen@foley.com

---

[2] "If the court determines that it lacks personal jurisdiction over [defendant], it would be improper for this court to reach the merits of the case." *Rawlins*, 2014 U.S. Dist. LEXIS 57076, at *4. "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Rachuy*, 743 F.3d at 211 (quoting *Steel Co.*, 523 U.S. at 94).

Richard L. Norris
NORRIS CHOPLIN & SCHROEDER LLP
rnorris@ncs-law.com

Scott A. Harkness
NORRIS CHOPLIN & SCHROEDER LLP
sharkness@ncs-law.com

Nancy J. Sennett
FOLEY & LARDNER LLP
nsennett@foley.com